UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ST. ANTHONY'S MEDICAL CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 4:09CV844 HEA |
| NATIONAL SERVICE INDUSTRIES, INC., d/b/a NATIONAL LINEN SERVICE, | ) ) ) ) | |
| Defendant. | ) ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court pursuant to Plaintiff St. Anthony's Medical Center's ("Plaintiff") cause of action brought against Defendant National Service Industries, Inc. d/b/a Nation Linen Service ("Defendant") alleging breach of contract, negligence and breach of implied warranties. While multiple motions have been filed by the parties, the Court will now address the following motions: Defendant's Motion for Partial Summary Judgment [Doc# 49], Defendant's Motion to Exclude Causation Testimony of Plaintiff's Expert [Doc# 60], and Defendant's Motion for Summary Judgment [Doc# 61].

**Facts and Background**

On January 31, 2000, Plaintiff and Defendant entered into a written contract in which Defendant agreed to perform laundry services on various types of

hospital linens for Plaintiff.[1] Included in the various types of linens, Defendant agreed to perform laundry services for operating room ("O.R.") towels. O.R. towels were washed separately from all other types of linen. On or about March 24, 2005, an unknown sterilization technician employed by Plaintiff placed an unspecified number of O.R. towels into one of its steam autoclaves along with a number of stainless steel surgical instruments and titanium implants. Larry Boggs, the Manager of Sterile Processing for Plaintiff, testified that some instruments would be wrapped first in linen such as O.R. towels and then wrapped in sterilization wrapper on top of that. Boggs testified that on the morning of March 24, 2005, he received multiple calls from operating room employees of Plaintiff informing him that various stainless steel medical instruments were discolored, and the O.R. towels that had been wrapped around them were "crumbling" and "shredding." Boggs further testified that he determined that all of the discolored medical items appeared to have been autoclaved in the same load.

Plaintiff brings this suit asserting that as a result of Defendant's negligence in laundering the towels and linens, an obligation of National Linen under the Contract, the towels and linens provided to Plainitff were defective and caused more than $150,000.00 worth of property damage.

---

[1] When the parties initially entered into the contract, Plaintiff was a member of Unity Health System, a Missouri corporation made up of many health care facilities.

***Defendant's Motion to Exclude Causation Testimony of Plaintiff's Expert***

Plaintiff's expert, Carolyn Otten of Chemir Analytical Services, Inc., opines that because Defendant used a product containing fluorosilicic acid as a souring agent in its laundering process, the fluorine found in analytical testing of damaged items (a) must have come from the souring agent, and (b) must have been the cause of damage. Defendant contends that Plaintiff's causation opinion suffers from many flaws and shortcomings, any of which render her opinion as to causation inadmissible pursuant to the standards of Federal Rule of Evidence 702 and the standards outlined in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993).

Federal Rule of Evidence 702 governs admission of expert testimony. *National Bank of Commerce v. Associated Milk Producers, Inc.,* 191 F.3d 858, 862 (8th Cir.1999). Rule 702 states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

The Federal Rules of Evidence require the trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

*Daubert,* 509 U.S. at 589; *accord, Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). When, as here, the nature of the expertise offered is in the scientific context, the subject of the expert's testimony must be "scientific ... knowledge." *Daubert,* at 589-90, 590 n. 8. "Scientific" implies a grounding in scientific methods and procedures, and "knowledge" implies "more than subjective belief or unsupported speculation." *Id.* at 590. The requirement that an expert's testimony pertain to "scientific knowledge" establishes a standard of evidentiary reliability. *Id.* Proposed scientific expert testimony "must be supported by appropriate validation-- *i.e.,* 'good grounds,' based on what is known," and an inference or assertion must be derived by the scientific method. *Id.; accord, Glastetter v. Novartis Pharms. Corp.,* 252 F.3d 986, 989 (8th Cir.2001) (per curiam); *Housley v. Orteck Int'l, Inc.,* 488 F.Supp.2d 819, 824 (S.D.Iowa 2007). The assumption "that the expert's opinion will have a reliable basis in the knowledge and experience" of the expert's discipline is the premise for permitting an expert wide latitude to offer opinions, including those not based on firsthand knowledge or observation. *Daubert,* 509 U.S. at 592.

When expert scientific testimony is proffered, the trial judge must then determine at the outset whether the expert is proposing to testify to scientific

knowledge that will assist the factfinder to understand or determine a fact in issue. *Id.* "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 692-93. Many factors bear on a court's assessment, including, but not limited to, whether the theory or technique has been subjected to peer review and publication, the known or potential error rate, especially of a scientific technique; and "general acceptance" of a relevant scientific community." *Id.* at 594. The court must focus on "the reliability of evidence as ensured by the scientific validity of its underlying principles," not the conclusions generated by the principles and methodology. *Id.* at 594 n. 12. Any doubts regarding the admissibility of expert testimony should be resolved in favor of admission. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir.2006).

Defendant alleges that Dr. Otten's conclusions as to causation fail to meet the standards of admissibility required by Rule 702 and the *Daubert* standards listed above. Specifically, Defendant contends that Dr. Otten does not have a sufficient legal background in corrosion to render an expert opinion this case. Upon review of Dr. Otten's CV and her deposition, it shows the following: Otten holds a Ph.D in chemistry, with an emphasis in inorganic chemistry; through her

employment with Chemir Analytical, a chemical testing lab, she manages apprximately 100-200 projects a year; she has published multiple articles regarding her work on boron nanowires; she has applied her expertise in other cases involving chemical corrosion, performing both the elemental analysis and analytical analysis; and she has taught multiple chemistry courses–which cover corrosion–at Washington University and East Central College.

Plaintiff calls Otten as an expert to testify on behalf of the corrosion activity that allegedly contributed to the corrosion of the medical instruments that are at issue in this case. Based on Otten's extensive training, experience and credentials, it is clear to the Court that Otten's opinion will have a reliable basis in the knowledge and experience of her discipline. *See Daubert,* 509 U.S. at 592. Thus, Defendant's contention that Otten does not have a sufficient background to serve as an expert fails.

Defendant further contends that Dr. Otten failed to eliminate other sources of damage. It's Dr. Otten's opinion that based on the analytical data and evidence, she concluded to a reasonable degree of scientific certainty that the towels were exposed to fluorosilicic acid or were not rinsed properly of fluorosilicic acid. Defendant argues that Otten failed to consider other obvious alternate explanations for the damage that occurred to the medical instruments in

Plaintiff's autoclave. Specifically, they point to the fact that Otten failed to perform any tests on the specific autoclave that housed the damaged instruments. Based on the discovery before the Court, Defendant's argument fails. In her deposition, Otten addressed this subject and stated that considering the fact that multiple autoclaves were supplied by the same steam source and no other autoclaves experienced similar problems, she ruled out the possibility of a faulty autoclave with a reasonable degree of scientific certainty. Further, as Plaintiff points out, Defendant's own expert, Dr. Schuman, indicated that it is not clear how the autoclave could have been contaminated.[2] Defendant further argues that Otten did not consider the decontamination process or the chemicals used therein as a possible source of corrosive chemicals. While it is true that Otten did not initially explore this theory, she has since reviewed the data for the decontamination agents used in 2005 at St. Anthony's and offered a Supplemental Report [Exh. 3]. In her report, she determined to a reasonable degree of scientific certainty that the chemicals used in the decontamination

---

[2]The Court acknowledges that Defendant's expert did not rule out the autoclave as the source of contamination; however, he was unable to provide evidence showing the autoclave was the direct source. It appears that Dr. Schuman concludes "that contamination from a medical source provided corrosion inducing species that, upon corrosion of the stainless steel hardware, produced strong acid that degraded the towels and further degraded the steel items during the autoclave procedure." Expert Report of Dr. Schuman at page 5 of 5/

7

process would not be responsible for the corrosion of the instruments or the acidity of the damaged towels. In light of such findings, it is clear to the Court that Dr. Otten did in fact eliminate other possible causes or explanations for the damage sustained by Plaintiff.

Defendant further alleges that Plaintiff's causation theories have not been accepted by the scientific community. They contend that there is no evidence in the record that Otten attempted autoclaving undamaged stainless steel or titanium instruments in the damaged towels, and that her opinions regarding causation have not been peer-reviewed. This Court is not persuaded by this argument. These allegations are suspect, at best, in light of the fact that Defendant's own expert testified that upon reviewing Otten's analytical work, he felt that her investigation was "fairly thorough" and decided against performing additional underlying analytical work. Furthermore, the record shows that Otten performed multiple evaluative tests including but not limited to FT-IR Analysis (Fourier Transform Infrared Spectroscopy), GC/MS (gas chormatography mass spectronomy), SEM/EDXA (scanning electron microscope with energy dispersive x-ray analysis) and LC/MS (liquid chromatography followed by mass spectronomy)–all of which were performed to study the chemical composition and components of the damaged towels and medical instruments. Defendant fails to provide sufficient

evidence that would indicate that these tests are not accepted by the scientific community. As such, Defendant's argument regarding acceptance by the scientific community fails.

Although the district court's gatekeeping function includes an analysis of the reliability of scientific evidence, neither *Daubert* nor Rule 702 requires that an expert opinion resolve an ultimate issue of fact to a scientific absolute in order to be admissible. *Bonner v. ISP Technologies, Inc.,* 259 F.3d 924, 929 (C.A.8 (Mo.), 2001). Despite Defendant's assertions to the contrary, Otten's opinion meets standards of admissibility required under Rule 702 and *Daubert*. Although Defendant may disagree with Otten's opinion regarding the cause of the corrosion, this question is ultimately left for the jury's determination. Generally, a district court may only exclude an expert's opinion when it is so fundamentally unsupported that it can offer no assistance to the jury. *Id.* at 929-930. Such is not the case here. Defendant is free to cross-examine Otten at trial; however, her opinion regarding causation of the damage to the towels and medical instruments is deemed admissible.

Finally, Defendant contends that any speculative value of Plaintiff's proposed causation testimony is outweighed by the dangers of prejudice. Pursuant to Rule 403, otherwise relevant evidence may be excluded if its

probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The Court is unpersuaded by Defendant's last-ditch effort to exclude Otten's testimony and, as discussed above, finds that her opinion is neither speculative or unreliable. In sum, Dr. Otten possesses the required expertise and has applied reliable methods to the facts of this case to form her opinion. As a result, Defendant's motion to exclude Otten's causation testimony is DENIED.

## *Defendant's Motions for Summary Judgment*

The Court will now examine Defendant's summary judgment motions. Defendant filed a Motion for Partial Summary Judgment [Doc# 49] regarding recovery of attorney fees. Subsequently, Defendant also filed a standard Motion for Summary Judgment [Doc# 61]. For reasons set forth below, both motions fail.

## **Summary Judgment Standard**

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.,* 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the

burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. "The party opposing summary judgment may not rest on the allegations in its pleadings; it must 'set forth specific facts showing that there is a genuine issue for trial.'" *United of Omaha Life Ins. Co. v. Honea,* 458 F.3d 788, 791 (8th Cir.2006) (quoting Fed.R.Civ.P. 56(e)); "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson,* 477 U.S. at 248; *Woods,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in

[their] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. *Wilson v. Int'l Bus. Mach. Corp.,* 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). Summary Judgment will be granted when, viewing the evidence in the light most favorable to the nonmoving party and giving the nonmoving party the benefit of all reasonable inferences, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Samuels v. Kansas City Mo. Sch. Dist.,* 437 F.3d 797, 801 (8th Cir. 2006). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin,* 483 F.3d 516, 526-7(8th Cir. 2007). "Simply referencing the complaint, or alleging that a fact is

otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197, 3 (8th Cir. 2008).

***Defendant's Motion for Partial Summary Judgment***

The parties here entered into a written contract on January 31, 2000 in which Defendant agreed to perform laundry services on various types of hospital linens for Plaintiff. Contained in Section 18 of the contract was the following indemnity provision:

> Except as otherwise provided in Paragraph 17 above, each party agrees to defend, indemnify and hold harmless the other party from and against any and all liabilities, claims, causes of action, damages, and expenses (including reasonable attorney's fees) arising out of or related to personal injuries or property damage caused by such party's negligent performance of any of it obligations hereunder, except to the extent caused by the negligence or willful misconduct of the other party.

Defendant contends that they are entitled to partial summary judgment on the attorneys' fees claim because the indemnity clause at issue does not expressly provide for recovery of attorneys' fees in an action on the contract. Plaintiff alleges that if they prevail in this litigation, the indemnity clause will allow them to recover its attorneys' fees incurred in bringing this action. Generally, Missouri follows the American Rule for recovery of attorneys' fees, under which litigants bear their own litigation expenses with three principal exceptions: (1) recovery pursuant to a contract or provided by statute; (2) recovery as damages in collateral

litigation; or (3) reimbursement to balance the benefits. *Monarch Fire Protection Dist. of St. Louis County, Missouri v. Freedom Consulting & Auditing Service, Inc.,* 678 F.Supp. 2d 927, 938 (E.D.Mo. 2009).

Generally, courts do not interpret indemnity clauses as permitting the recovery of attorneys' fees in a suit between contractual parties for breach of contract. *Nusbaum v. City of Kansas City,* 100 W.W.3d 101, 109 (Mo.2003) (en banc); *Monarch Fire Protection Dist.,* 678 F.Supp. 2d at 939 . However, as held in *Nusbaum* and *Monarch Fire Protection Dist.*, parties are free to contract around this general rule, but the non-breaching party will be permitted to recover such fees only if the indemnity clause "expressly provide[s] for the recovery of expenses incurred in establishing the right to indemnity." *Id.* (citing *RJF Int'l Corp.v. B.F.Goodrich Co.,* S.W. 2d 366, 368 (Mo.Ct.App.1994)). "When a contract uses plain and unequivocal language, it must be enforced as written." *Lake Cable, Inc.v. Trittler*, 914 S.W.2d 431, 436.

In this case, Defendant National Linen agreed to indemnify and hold Plaintiff St. Anthony's Medical Center harmless for "any and all liabilities, claims, causes of action, damages, and expenses (*including reasonable attorney's fees*) arising out of or related to personal injuries or *property damage caused by such party's negligent performance* of any of its obligations *hereunder*[...]. Section 18

of Contract. The inclusion of the term "hereunder" clearly refers to the party's obligations under the Contract. The plain, unequivocal reading of the Contract's indemnity clause, Section 18, contemplates a suit by one party against the other in the event of the negligent performance of the other's contractual obligations. Courts have consistently allowed for the recovery of attorneys' fees in breach of contract actions under indemnity clauses that refer to losses incurred in the enforcement of contractual rights. *See, e.g., RJF Int'l Corp. v. B.F. Goodrich Co.,* 880 S.W. 366, 369 (Mo.Ct.App.1994) (obligation to indemnify for, *inter alia*, "each and every failure or breach of any representation, warranty, covenant and indemnification by [the breaching party"]; *Lee v. Investors Title Co.,* 241 S.W. 366, 368 (Mo.Ct.App.2007) (provision to "indemnify and hold [Title Company] harmless of and from any and all loss, ... including attorneys' fees, which [Title Company] shall or may suffer or incur or become liable for under its said policy ... on a ... claim or in connection with its enforcement of its rights under this Agreement"). As such, should Plaintiff prevail in this action, it is entitled to recovery of its attorney's fees in prosecuting under Section 18. Therefore, Defendant 's Motion for Partial Summary Judgment [Doc# 49] is DENIED.

***Defendant's Motion for Summary Judgment***

Based on the entire record, the Defendant is not entitled to summary judgment. Considering all of the facts, together with inferences to be drawn therefrom, it appears that genuine issues of material fact remain–namely the cause of the damage to the medical instruments. Summary judgment is therefore, not appropriate at this time. Therefore, the Defendant's Motion for Summary Judgment, (Doc. 24), is denied.

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment [Doc# 49] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Causation Testimony of Plaintiff's Expert [Doc# 60] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [Doc# 61] is **DENIED**.

Dated this 30th day of September, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE